## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN EAGLE OUTFITTERS, INC. and RETAIL ROYALTY COMPANY<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM SERVICES LLC and AMAZON.COM, INC.<br><br>Defendants. | CASE NO.:<br><br><br>JURY TRIAL DEMANDED<br><br><br>**COMPLAINT** |

Plaintiffs American Eagle Outfitters, Inc. and Retail Royalty Company (collectively, "**AEO**" or "**Plaintiffs**") by their undersigned attorneys, file this Complaint against Defendants, Amazon.com Services LLC and Amazon.com, Inc. (collectively, "**Amazon**" or "**Defendants**"), and allege, upon knowledge as to themselves and otherwise upon information and belief, as follows:

## NATURE OF ACTION

1.      This action arises out of Amazon's flagrant, unauthorized use of the AERIE and OFFLINE BY AERIE famous registered trademarks (collectively, the "**Aerie Marks**[1]") in its sponsored advertisements and its responses to organic search engine queries.  Simply put, Amazon intentionally used the Aerie Marks without authorization in search results in order to deceive

---

[1] AEO owns numerous U.S. federal trademark registrations for its Aerie trademarks covering a wide variety of products and services, such as apparel, tops, bottoms, sweatshirts, footwear, headwear, and bags, as well as retail services for such products (*see e.g.*, U.S. Reg. Nos. 3486591, 3788744, 3419683, 3776357, 4796191).  Similarly, AEO also owns federal trademark registrations for the OFFLINE BY AERIE mark covering numerous goods and services, including clothing, headwear, tote bags, sweatshirts, sweatpants, tops, bottoms, and retail store services for clothing, among other products (*see e.g.*, U.S. Reg. Nos. 6859898 and 7236963).

consumers into believing Aerie products were available on Amazon, drive traffic to its platform, and sell competing merchandise.

2.      AEO is a world-renowned purveyor of clothing and accessories founded in 1977. In 2006, AEO launched its highly successful Aerie brand, which sells a variety of women's apparel products including but not limited to bras and other undergarments, dorm wear, active apparel, loungewear, accessories and sleepwear.  AEO launched its successful OFFLINE BY Aerie collection, which contains similar products, in 2020.

3.      The Aerie brand has achieved great commercial success through its commitment to authenticity, pairing the promotion of body positivity with a diverse set of brand ambassadors, including gymnast Aly Raisman, music artist Kelsea Ballerini, actress Hari Nef, and actress Sophia Bush.  Aerie is a leader in the body positivity movement, with a pledge not retouch any of their models' photos.  In 2014, AEO launched the #AerieREAL Campaign, featuring unretouched photos of models to celebrate natural beauty.  That campaign was awarded Glossy's Best Influencer Campaign – Fashion in 2018.  The Aerie brand also works with the AERIE REAL FOUNDATION to build confidence in women, foster an inclusive community, and protect the planet.  Amazon's blatant, and knowing, infringement of the Aerie Marks is a far cry from the Aerie brand's focus on authenticity.

4.      There are AEO stores in four countries and AEO ships products to approximately 80 countries.  In 2023, the total net revenue for AEO rose from $4.990 billion in 2022 to $5.262 billion.

5.      AEO has achieved great commercial success with the Aerie Marks over the years, having sold many billions of dollars' worth of products and prominently displaying the Aerie Marks on its high-traffic websites (ae.com; aerie.com), on the "AE + Aerie" mobile app, and on

social media platforms, where millions of consumers have seen or purchased products under the Aerie Marks.

6.    Aerie brands have garnered significant followings on social media since the Aerie Instagram account was created in 2012.  That Instagram account currently has 1.6 million followers.

7.    AEO's products are widely available through its online stores as well as brick and mortar retail stores.  The Aerie brand itself has grown from 175 standalone stores in 2021 to 310 standalone stores in 2024, including at least 31 stores in New York State.

8.    But Aerie merchandise is not sold on the Amazon marketplace and AEO has not authorized Amazon to use any of the Aerie Marks in selling merchandise.  Although Amazon has requested rights to sell Aerie merchandise, AEO has intentionally declined so Aerie can foster its own brand identity and customer experience.  Nevertheless, Amazon impermissibly used the Aerie Marks in the advertising copy of its sponsored advertisements, advertisement URLs, and in the page titles and URL results that Amazon generates in response to search engine requests to drive consumer traffic to its marketplace.

9.    Amazon is one of the world's largest retailers, and as a result, its links appear with great prominence in search results.  But Amazon has used its market power to willfully infringe the Aerie Marks by using the Aerie brand name in its sponsored ads and organic search results, intentionally diverting sales traffic (and deceiving consumers) to drive them to Amazon's marketplace in order to sell consumers competing products.

10.    Amazon has rampantly and flagrantly used and currently uses the Aerie Marks in responses to organic search engine queries (search results that are driven by Amazon's site architecture), without AEO's permission.

11.    Amazon has also infringed the Aerie Marks by using them in sponsored keyword-based advertising (online advertising driven by words or phrases to trigger advertisements on search engine results pages).

12.    When a consumer searches for Aerie products on a search engine, she sees search results, sometimes sponsored but also organic search results, using the Aerie Marks and indicating that she is able to purchase Aerie products on Amazon.  But this is false and consumers are being deceived.

13.    Consumers who click on these results and the accompanying Amazon URL are directed to an Amazon webpage that displays only knock-offs and "dupes" of Aerie products, when no actual Aerie merchandise is available for sale on Amazon.



14.    To be clear, Amazon's continued violation of AEO's trademark rights is intentional.  AEO notified Amazon over a month ago of Amazon's infringing conduct, yet Amazon did not stop and, instead, tried to be more creative in its infringement by relying on misspellings of the Aerie Marks (for example, using "Aeries," "Arie," or "Aries").



15.    Amazon's rationale is transparent; Amazon lacks authorization to offer Aerie merchandise, so it instead tries to capitalize on AEO's intellectual property rights and goodwill by deceiving Aerie's devoted consumer base into believing they can find Aerie products on the Amazon platform.  Instead, consumers are led to inferior quality knock-offs.

16.    Even if consumers are ultimately able to ascertain that the products on Amazon's platform are not AEO's products, the damage is done.  The consumers are drawn to the Amazon platform through Amazon's use of the Aerie Marks, creating initial interest confusion such that consumers think, even momentarily, that they will access Aerie products, and may end up purchasing a competing good without ever going back to their initial search.  But for Amazon's use of the Aerie Marks, upon information and belief, Amazon would be unable to drive these consumers to the competing products.

17.     AEO protects its brands and cannot allow bad actors like Amazon to confuse and deceive consumers and undermine the value of the Aerie Marks.  Amazon's use of the Aerie Marks infringes AEO's established trademark rights under federal and state law, dilutes the distinctiveness of these well-known marks, and constitutes federal and state unfair competition. Accordingly, AEO seeks injunctive relief, Amazon's profits, AEO's actual damages, attorneys' fees, and costs.

## THE PARTIES

18.     Plaintiff American Eagle Outfitters, Inc. is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business located at 77 Hot Metal Street, Pittsburgh, Pennsylvania 15203.

19.     Plaintiff Retail Royalty Company is a corporation organized and existing under the laws of the State of Nevada, with a principal place of business located at 3883 Howard Hughes Parkway Las Vegas, Nevada 89169.  Retail Royalty Company, a wholly owned subsidiary of Plaintiff American Eagle Outfitters, Inc., is the owner of AEO's trademarks, including the Aerie Marks, and licenses them exclusively to American Eagle Outfitters, Inc.

20.     Upon information and belief, Defendant Amazon.com Services LLC is a limited liability company organized and existing under the laws of Delaware, with a principal place of business located at 410 Terry Avenue North, Seattle, Washington 98109, with an active registration with the New York Secretary of State (DOS ID# 5687476).

21.     Upon information and belief, Defendant Amazon.com, Inc. is a corporation organized and existing under the laws of Delaware, with a principal place of business located at 410 Terry Avenue North, Seattle, Washington 98109, doing business in the State of New York, with an office located at 424 Fifth Avenue, New York, New York 10018.

## JURISDICTION AND VENUE

22.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1338 because it arises under the Lanham Act, 15 U.S.C. § 1051, *et seq*.  This Court has supplemental jurisdiction over AEO's state law claims pursuant to 28 U.S.C. § 1367(a) because they are related to AEO's Lanham Act claims and form part of the case or controversy.

23.     This Court has personal jurisdiction over Amazon.com, Inc. and Amazon.com Services LLC pursuant to N.Y. C.P.L.R. §§ 301 and 302.  Upon information and belief, Amazon.com, Inc. and Amazon.com Services LLC regularly transact business within the State of New York and have committed tortious acts causing injury within the State while regularly doing or soliciting business in the State and/or should reasonably expect their tortious acts to have consequences in the State and derive substantial revenue from interstate or international commerce.  Amazon's unlawful activity has occurred and continues to occur in this District, and has caused and continues to cause AEO to suffer harm in this District.

24.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction here and a substantial part of the events giving rise to the claims herein occurred in this District.

## FACTUAL BACKGROUND

### A.     The Aerie Marks

25.     AEO operates one of the world's leading chain of consumer retail stores featuring a wide variety of apparel, tops, bottoms, sweatshirts, footwear, headwear, bags, shorts, sweatshirts, underwear, bralettes, and swimwear, and other merchandise.

26.     AEO has continuously used the Aerie Marks in commerce in connection with retail store services and a wide variety of clothing and clothing accessories since 2006.

27.    AEO sells its products directly to consumers through AEO-owned retail stores in the United States, Canada, Mexico, and Hong Kong.  AEO products are also available for purchase online at www.ae.com and www.aerie.com (collectively, the "**AEO Websites**"), as well as through the AEO mobile app, "AE + Aerie".

28.    The Aerie Marks are integral to the promotion, marketing, advertising, and sale of AEO products and merchandise, including on the AEO Websites.  The ae.com domain name allows consumers to browse Aerie products, and has been used to identify the main AEO website since 1999.

29.    In addition to promoting the Aerie Marks and products on the AEO Websites, AEO reaches its diverse customer base in a variety of ways, including, but not limited to, sponsored search engine ads, organic search engine queries, running ads on social media accounts such as Facebook and Instagram, digital media ads, print magazine ads, and displaying ads on billboards, including in Times Square.

30.    AEO owns 33 U.S. trademark registrations for the Aerie Marks covering a wide variety of goods and services including, but not limited to, retail store services, on-line services, charitable services, clothing, accessories, and other merchandise.  *See* Exhibit A.  Copies of the registration certificates issued by the United States Patent and Trademark Office for all of the registrations listed in the chart in Exhibit A are attached as Exhibit B.  These registrations were duly and legally issued, are valid and subsisting, and constitute *prima facie* evidence of AEO's ownership of and exclusive right to use the Aerie Marks in commerce.  Many of these registrations have achieved incontestable status pursuant to 15 U.S.C § 1065.

31.    AEO has invested a substantial amount of time, effort, and money in advertising and promoting the Aerie Marks nationwide.  As of August 2024, AEO's advertising costs of the

Aerie Marks for 2024 amounted to $34.8 million and AEO expended $57.4 million on advertising the Aerie Marks in fiscal year 2023.

32.      As a result of AEO's exclusive and extensive use of the Aerie Marks, the Aerie Marks have acquired value and recognition as a source of high quality clothing in the United States. In 2024, Aerie was named one of "America's Best of the Best: Lingerie and Underwear" as well as "America's Best Retailers: Lingerie & Underwear" by Newsweek.  In 2017, AEO won the Femmy Award for Retailer of the Year from fashion industry publication Women's Wear Daily. And, AEO's #aerieReal campaign, which promotes body positivity, no retouching, empowerment, inclusivity, and efforts to support women's confidence, has received critical praise and has raised awareness and millions of dollars of donations for charitable organizations like the National Eating Disorders Association (NEDA), Bright Pink, and the Special Olympics.

33.      AEO has worked to cultivate its Aerie brand and makes strategic business decisions about how to market, promote and distribute its products, including maintaining strict quality control standards for products bearing the Aerie Marks.  AEO offers consumers the option to buy Aerie products online at the AEO Websites, as well as through its mobile app, but AEO has chosen not to make its Aerie products available for sale on Amazon.

**B.      Internet Advertising**

34.      Companies that operate on the internet can attract users to their websites, promote website traffic, and drive sales through a few mechanisms.

**1.      <u>Keyword Advertising</u>**

35.      Keyword advertising is a type of online advertising.  When a consumer types a word or phrase (a "keyword") into a search engine like Google or Bing as part of a search query,

it triggers certain advertisements in addition to search results, and the search engine will display both the search results and the advertisements at the top of the search engine results page.



36.     Each time a consumer searches for a word or phrase, there is an auction that takes place in real time, in which advertisers bid for the right to serve an advertisement in response to the keyword.

37.     Keyword-driven ads may be shown in different positions on the search engine results page and in response to various search terms depending on what the search engine's algorithm "knows" about a given consumer, including the consumer's location and the date and time of the search.

38.     Upon information and belief, Defendant Amazon.com Services LLC is the Amazon entity that purchases Amazon's sponsored keyword-driven advertisements.

### 2.    **Organic Search**

39.    Organic searches are another way to promote a brand.  When a consumer runs a search on a search engine like Google or Bing, there are unpaid search results that are generated as part of the organic search.

40.    Upon information and belief, while the keyword search results are denoted by the words "ad" or "sponsored," organic search results are not paid for and do not display the "ad" marker (and, in some instances, for example on Bing, will display the word "web").



41.    The organic search results appear based on the perceived relevance to the user's search terms.  The perceived relevance is determined, in part, by a process known as "site mapping."

### 3.    Site Mapping

42.    Large websites often contain vast amounts of content, making it challenging for users and search engines to display the information that is searched for by users.  Companies that operate large websites can create a "sitemap" file that indexes the website and helps a search engine more efficiently determine what information to display from the company's webpage.  A sitemap tells search engines which pages and files the company thinks are important on the site, and provides valuable information about the files.

43.    Upon information and belief, large websites like Amazon use their sitemap files to direct search engines to display results that are closely aligned to users' searches.  This includes, but is not limited to, directing search engines to show "display URLs," which are shortened versions of the website URL, and "ad URLs," which are the top line of the search result that users can click to visit the URL, containing recognizable terms from the users' search.

44.    Upon information and belief, when building a sitemap, companies, like Amazon, are able to specify what display URLs and ad URLs they would like to appear in search results.

### C.    Amazon's Infringing Conduct

45.    Amazon is the world's largest online retailer, generating over 600 billion dollars in sales annually.  It is the second-largest private employer in the United States and the second-largest company in the world by revenue as of 2024.  Amazon is the 12th-most visited website in the world and 82% of its traffic comes from the United States.

46.    Consumers are able to access the Amazon website at www.amazon.com in order to search for and purchase an incredibly wide-ranging set of goods, including electronics, grocery items, furniture, clothing, books, office products, appliances, art supplies, and more.

47.    According to a letter to shareholders, in 2023 there were over 7 billion items ordered on Amazon that were delivered on the same or next day.

48.     Upon information and belief, Amazon generates revenue through the sale of Amazon brand products, as well as through the sale of products by third parties who use Amazon as the distributor.  For example, brand owners may choose to maintain pages on the Amazon website, from which consumers can purchase that brand owner's merchandise sold by Amazon.com and shipped by Amazon.com.

### 1.     Amazon's Infringing Sponsored Advertisements

49.     Amazon knows it is not authorized to sell any Aerie products, yet Amazon used the Aerie Marks without permission in sponsored advertisements on search engines.  Prior to AEO reporting Amazon's infringing conduct to Google and demanding that Google remove the infringing sponsored advertisements, a Google search for "Aerie" and "Offline by Aerie" returned the following sponsored ad results:



In the above sponsored advertisements, the Aerie mark is used both in the Ad URL, the hyperlink a user can click to direct them to the website, (depicted above as, in the first example,

"Save On Offline By **Aerie** Leggings") and in the Ad text (depicted above as, in the second example, "Find Deals on **Aerie** Bras For Women in Womens Shops on Amazon") (emphasis added).

50.    These ads are intended to (and do) trick customers into thinking that by clicking the provided link, they will be able to "Shop Aerie" or "Save on Offline by Aerie" on the "Official Amazon Site."  These statements are patently false because customers cannot shop for Aerie products on Amazon.

51.    Further exacerbating the likelihood of deception and confusion, a consumer who clicks the link contained in these sponsored ads may never realize that she is not able to purchase Aerie products on Amazon.  Consumers who click the ads are directed to an Amazon webpage without any Aerie merchandise, and instead with products that are completely outside of AEO's control.  The prominent placement of several Aerie Marks, including Aerie in the Ad URL and Ad text, give the false impression that these landing pages contain Aerie products for sale when, of course, they do not.

52.    To be clear, Amazon's use of the Aerie Marks causes consumer confusion even if the customers understand that the products available on Amazon are not Aerie-branded by the time of purchase.  This is because potential consumers who were searching for Aerie products are often diverted and distracted by the Amazon links, which, by virtue of Amazon's size and Amazon's use of the Aerie Marks, grab the consumer's attention by appearing on the first page of search engine results.  Thus, even though the consumer may eventually become aware that they are not purchasing an Aerie product from Amazon, Amazon's unauthorized use of the Aerie Marks created initial interest confusion and captured the consumer's attention from the start.

53.     These diverted sales directly benefit Amazon.  Upon information and belief, Amazon either receives a commission from third party sellers, or in some cases, Amazon directly benefits by selling its own products to consumers who would have otherwise purchased Aerie products.

2.     **Amazon's Infringing Organic Search Results**

54.     In addition to infringing sponsored advertisements, Amazon also infringes the Aerie Marks in its organic search results.  For example, a Google search for Aerie products returned the following result.



In this search result, Amazon uses the Aerie mark both in the display URL (depicted as https://www.amazon.com>**Aerie**-Shorts>k=**Aerie**+Shorts) and the Ad URL (depicted as "**Aerie** Shorts") (emphasis added).  This search result is intended to (and does) mislead customers into thinking that by clicking the provided URL, they will be able to purchase Aerie shorts on Amazon. The prominent positioning of the Aerie mark in Ad URL, the inclusion of Aerie in the Display URL and the displayed image of similar products all give the impression that the consumer will be able to purchase Aerie-branded products by following the link.  As discussed above, this is textbook initial interest confusion that diverts customers toward Amazon's platform and away from AEO's products.

55.     Upon information and belief, these search results are generated because Amazon's site mapping criteria proscribe that Google, Bing and other search engines display Ad URLs and Display URLs that contain the Aerie Marks.

56.     As depicted below, as of July 2024, Amazon's infringing activity amounts to 502 search engine keywords that use the Aerie Marks showing up on the first page of organic search engine results.  This is no accident.  Upon information and belief, Amazon has intentionally increased the use of the Aerie Marks in generating those organic search engine results.  Compared to one year ago, in July 2023, less than 250 keywords were used containing the Aerie Marks.  Upon information and belief, Amazon intentionally elected to more than double the keywords using the Aerie Marks to drive traffic to its marketplace.



57.     Upon information and belief, because Amazon's site mapping instructions direct search engines to present Display URLs and Ad URLs containing the Aerie Marks, users click the linked results believing that they can find Aerie products on Amazon.   But the linked results directed the user to pages like the one displayed below:



Although Aerie appears in the URL at the top of the website, none of the products are AEO products.  This conduct is highly deceptive and unlawful.

**D.     Amazon's Infringement Causes Consumer Confusion, Dilutes the Aerie Marks, and Harms AEO**

58.     Amazon has both infringed AEO's intellectual property rights and wrongfully capitalized on the fame of the Aerie Marks through its unauthorized promotion, advertising, and marketing of Amazon's website using the Aerie Marks and/or confusingly similar marks in a manner that is likely to cause consumer confusion.

59.     Amazon's sponsored advertisements and organic search responses are attempts to piggyback off the goodwill, success, and popularity of the Aerie Marks in order to mislead consumers and direct them to Amazon.

60.     Amazon's conduct is the epitome of a "bait-and-switch," consumers are led to believe that Aerie products are available on Amazon's website, but are subsequently directed to listings for non-AEO products.  These non-AEO products include ones being offered by third-party sellers that are shipped directly by Amazon, on which, upon information and belief, Amazon earns a profit.  Further exacerbating the confusion, Amazon's website layout obscures brand information so that customers have difficulty determining the actual seller of those products.  This use of the Aerie Marks causes confusion in the marketplace, including but not limited to initial interest confusion.

61.     Amazon's use of the Aerie Marks will also dilute the valuable AEO brands and Aerie Marks.

62.     By way of example, a search for Aerie sweatshirts returned search results for legitimate Aerie products as well as an Amazon search result purporting to show an Amazon link for "Aerie Sweatshirt."[2]



63.     The infringing result is not that of a third party seller, but one expressly created by Amazon using Amazon's Ad URL.

---

[2] *See* Google, https://www.google.com/search?q=aerie+sweatshirt&rlz=1C1GCEU_enUS984US984&oq=aerie+sweatshirt&gs_lcrp=EgZjaHJvbWUyBggAEEUYOTIN%E2%80%A6 (last visited September 24, 2024).

64.     When a potential consumer clicks the Ad URL, expecting to be shown Aerie products, the consumer is met with non-AEO results, one of which is for the AlvaQ Women's Oversized Sweatshirt Casual Long Sleeve Button Henley Neck Pullover Tunic Tops Outfit.[3]



---

[3] *See* Amazon, https://www.amazon.com/Aerie-Sweatshirts/s?k=Aerie+Sweatshirts (last visited September 24, 2024).



65.    This is visually nearly identical to the Aerie Getaway Quarter Snap Sweatshirt (image below).[4]  But AEO has no control over the production of the AlvaQ sweatshirt, including that the AlvaQ sweatshirt uses a higher percentage of polyester, while the Aerie sweatshirt is primarily cotton.

---

[4] *See* Aerie, https://www.ae.com/us/en/p/aerie/matching-sets/lounge-sets/aerie-getaway-quarter-snap-sweatshirt/0743_3379_446?menu=cat4840006 (last visited September 24, 2024).



66.     Therefore, Amazon's practices not only infringe the Aerie Marks by causing consumer confusion and diverting sales from AEO, Amazon's practices also irreparably damage the goodwill associated with the Aerie brand by diluting the value of the Aerie Marks by associating the marks improperly with an unauthorized platform and often poor quality products.

67.     AEO decides with whom to contract and do business, and made the affirmative decision to keep the Aerie products off of Amazon.

68.     In fact, Amazon is acutely aware of this decision as Amazon has tried, unsuccessfully, to establish a business relationship whereby AEO would make its Aerie products available on Amazon.

69.     Rather than respect AEO's decision-making, Amazon has refused to take no for an answer and unilaterally decided that it should benefit from the unauthorized association with the Aerie Marks.

70.     Amazon's actions as alleged herein are also willful and deliberate as, upon information and belief, Amazon was aware of AEO's ownership rights to the Aerie Marks before it began using the Aerie Marks in its sponsored advertisements and responses to organic search results.

71.     Amazon's continued infringement is willful and deliberate given that, as early as August 9, 2024, AEO placed Amazon on notice of its infringing activities.

72.     As detailed above, Amazon's unlawful activity thus negatively impacts AEO's business reputation and goodwill, by causing consumer confusion as to the source or origin of Aerie products and the availability of Aerie products on the Amazon platform.

**E.     AEO's Efforts to End Amazon's Infringing Behavior**

73.     In an effort to protect its intellectual property rights, AEO demanded that Amazon cease its unlawful and unauthorized use of the Aerie Marks.  However, rather than immediately address this infringing behavior, Amazon continued to capitalize on the success of the Aerie Marks during back to school season and mislead consumers as to the source and origin of the Aerie products.

74.     AEO made Amazon aware of the unlawful activity on August 9, 2024.  Other than providing three boilerplate email responses to the AEO Letter claiming to be working to "resolve the issue quickly," Amazon took no identifiable corrective action.

75.     On August 23, 2024, having heard nothing of substance from Amazon, AEO again alerted Amazon to the infringing conduct, which had not abated, and Amazon's attempts to "game" the system and use slightly modified versions of the Aerie Marks in its advertising copy.  For

example, to thwart enforcement, Amazon began using "Aeries" and "Arie" in its sponsored advertisements.

Sponsored



Amazon
https://www.amazon.com › apparel › womens-shops

**Shop Aeries Leggings: Amazon**

**Amazon**.com Official Site — Find Deals on **Aeries** Leggings in Womens Shops on **Amazon**.

★★★★☆ Rating for amazon.com: 4.5 - 4,278 reviews - Return policy: Most items 30+ days

Shop Amazon Fashion · Explore Amazon Handmade · Fashion Sales & Deals

76.     Indeed, even after Google removed certain infringing organic search results in response to requests from AEO, Amazon continued to use the Aerie Marks in its Display URL and Ad URL results, including nearly 40 Amazon page listings on the first page of Google search results for Aerie Marks.

77.     On September 11, 2024, over a month after the initial letter from AEO, AEO was informed by an Amazon employee that the Aerie keywords used in sponsored ads would be placed on a "blocked" list that would take several days to implement, and the organic search results were outside the employee's purview.

78.     Finally, on September 20, 2024, six weeks after being put on notice of its rampant infringement, an Amazon representative first addressed the organic search results and confirmed that Amazon itself had been "indexing" its webpages with the Aerie Marks.  The Amazon representative indicated that Amazon would "de-index" an unidentified set of Amazon pages, but that this process could take almost a month to achieve results.  This delay simply allows Amazon to continue capitalizing on the Aerie Marks during the peak back-to-school shopping season.

79.     Amazon therefore continues to infringe on the Aerie Marks and has failed to sufficiently remedy its behavior.

80.     Amazon's actions have caused and continue to cause damage to AEO in an amount to be determined at trial.  AEO has also suffered substantial loss of goodwill and reputation as a result of Amazon's conduct.   These harms will persist unless Amazon is prohibited from continuing its wrongful actions.

## CAUSES OF ACTION

### COUNT ONE – LANHAM ACT VIOLATION
### Trademark Infringement in Violation of 15 U.S.C. § 1114

81.     AEO repeats and realleges each and every allegation set forth above.

82.     AEO is the owner of the Aerie Marks, all of which are registered with the USPTO and are valid, subsisting, used in commerce, and inherently distinctive.  Many of these registrations have achieved incontestable status pursuant to 15 U.S.C § 1065.

83.     AEO's use of its Aerie Marks predates any use by Amazon.

84.     Amazon has knowingly, intentionally and willfully used and continues to use in commerce, without AEO's permission, the Aerie Marks and/or confusingly similar marks in connection with products Amazon manufactures, advertises, promotes, distributes, and/or sells in the United States that are overlapping with products offered by AEO.

85.     Amazon's uses of the Aerie Marks are therefore likely to cause confusion, or to cause mistake, or to deceive as to the source, origin, sponsorship or affiliation of Amazon's products and are likely to cause consumers to believe, incorrectly, that Amazon's products originate from, or have been authorized, sponsored, approved or endorsed by AEO, whereas, in fact, AEO has not authorized Amazon's use of the Aerie Marks.  This confusion is likely to exist

whether or not an actual sale is completed as a result of the confusion or if the mistake is corrected before a sale occurs.

86.    The foregoing acts by Amazon constitute trademark infringement of AEO's federally registered trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

87.    As a direct and proximate result of Amazon's wrongful acts, AEO has suffered, continues to suffer, and/or is likely to suffer damage to its Aerie Marks, business reputation, and goodwill that money cannot compensate and for which AEO has no adequate remedy at law.

88.    AEO is further entitled to recover from Amazon the actual damages AEO has sustained, is sustaining, and/or is likely to sustain as a result of Amazon's wrongful acts, as well as Amazon's profits as a result of Amazon's wrongful acts, in an amount to be proven at trial.

89.    As a result of Amazon's willful infringement, AEO shall be entitled to an award of treble damages and increased profits, plus attorney's fees, under 15 U.S.C. § 1117.

## COUNT TWO – LANHAM ACT VIOLATION
### Trademark Dilution in Violation of 15 U.S.C. § 1125(C)

90.    AEO repeats and realleges each and every allegation set forth above.

91.    AEO is the owner of the Aerie Marks, all of which are registered with the USPTO and are valid, subsisting, used in commerce, and inherently distinctive.  Many of these registrations have achieved incontestable status pursuant to 15 U.S.C § 1065.

92.    Through exclusive, continuous and extensive use by AEO of the Aerie Marks, including through AEO's national advertising and marketing, the Aerie Marks have become famous and highly distinctive nationally among the general consuming public as a unique identifier of AEO's products within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

93.    AEO's use of its Aerie Marks predates any use by Amazon.  The Aerie Marks were famous before any use of the Aerie Marks by Amazon.

94.     Amazon has knowingly, intentionally and willfully used and continues to use in commerce, without AEO's permission, the Aerie Marks and/or confusingly similar marks in connection with products Amazon manufactures, advertises, promotes, distributes, and/or sells in the United States that are overlapping with products offered by AEO.

95.     Amazon's use of the Aerie Marks is likely to diminish the distinctiveness of and thus cause dilution by blurring of the famous Aerie Marks.

96.     Amazon's use of the Aerie Marks further subject AEO to dilution by tarnishment as a result of the association with products of inferior quality.

97.     Amazon's trademark dilution is willful.  Accordingly, this is an exceptional case within the meaning of 15 U.S.C § 1117(a).

98.     Amazon's conduct has caused and will continue to cause harm to AEO, unless enjoined.  AEO has and will continue to incur damages in an amount to be proven at trial.

### COUNT THREE – DECEPTIVE ACTS AND PRACTICES
### N.Y. General Business Law § 349

99.     AEO repeats and realleges each and every allegation set forth above.

100.    At all times relevant herein, the New York General Business Law was in effect. GBL § 349 prohibits misleading, consumer-oriented business acts that cause injury to the AEO.

101.    Amazon was and is doing business in the State of New York and is thus subject to New York law for the incidents described herein.

102.    Amazon misleadingly, inaccurately, and deceptively represents to consumers that AEO's Aerie merchandise is available on www.amazon.com.

103.    Upon information and belief, Amazon's deceptive practices have misled and will continue to mislead consumers.

104.    Upon information and belief, Amazon's deceptive practices have caused and are likely to cause substantial harm to AEO in the marketplace, including lost business and loss of goodwill and reputation.

105.    Amazon's deceptive and misleading practices therefore constitute a deceptive action and practice in the conduct of business in violation of GBL § 349.

**COUNT FOUR – FALSE ADVERTISING**
**N.Y. General Business Law § 350**

106.    AEO repeats and realleges each and every allegation set forth above.

107.    At all times relevant herein, the New York General Business Law was in effect. GBL § 350 prohibits false and misleading advertisements in connection with the sale of goods or services.

108.    Amazon was and is doing business in the State of New York and this is subject to New York law for the incidents described herein.

109.    Amazon's advertisements relating to AEO's products are false and/or misleading because AEO's Aerie products are not available for sale on www.amazon.com.

110.    Upon information and belief, Amazon has deceived and is likely to deceive reasonable consumers.

111.    Upon information and belief, Amazon's false advertising has caused, and is likely to cause substantial harm to AEO in the marketplace, including lost business and loss of goodwill and reputation.

112.    Amazon's conduct constitutes violation of GBL § 350.

**COUNT FIVE – TRADEMARK INFRINGEMENT**
**N.Y. General Business Law § 360-K**

113.    AEO repeats and realleges each and every allegation set forth above.

114.    At all times relevant herein, the New York General Business Law was in effect. GBL § 360-K prohibits use of a mark registered under Article 24 in connection with the sale, distribution, offering for sale, or advertising of any goods or services, likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services.

115.    Amazon was and is using the Aerie Marks without consent in connection with its advertisements in such a way that is likely to cause confusion among consumers as to the source or origin of such goods.

116.    Upon information and belief, Amazon's trademark infringement has caused and is likely to cause, substantial harm to AEO in the marketplace, including lost business and loss of goodwill and reputation.

117.    Amazon's conduct constitutes violations of GBL § 360-K.

### COUNT SIX – TRADEMARK DILUTION
### N.Y. General Business Law § 360-L

118.    AEO repeats and realleges each and every allegation set forth above.

119.    AEO is the owner of the Aerie Marks, all of which are registered with the USPTO and are valid, subsisting, used in commerce, and inherently distinctive.  Many of these registrations have achieved incontestable status pursuant to 15 U.S.C § 1065.

120.    The Aerie Marks are distinctive and have acquired secondary meaning.

121.    Amazon's unauthorized use of the Aerie Marks is virtually identical and/or substantially similar to the Aerie Marks and began after the Aerie Marks became distinctive and acquired secondary meaning.

122.    Amazon has knowingly, intentionally and willfully used and continues to use in commerce, without AEO's permission, the Aerie Marks and/or confusingly similar marks in

connection with products Amazon manufactures, advertises, promotes, distributes, and/or sells in the United States that are overlapping with products offered by AEO.

123.    Amazon's use of the Aerie Marks is likely to diminish the distinctiveness of and thus cause dilution by blurring of the famous Aerie Marks.

124.    Amazon's use of the Aerie Marks further subject AEO to dilution by tarnishment as a result of the association with products of inferior quality.

125.    At all times relevant herein, the New York General Business Law was in effect. GBL § 360-L provides that the likelihood of injury to business reputation or of dilution of the distinctive quality of a registered trademark or shall be a ground for injunctive relief.

126.    Amazon's conduct constitutes violations of GBL § 360-L.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

A.    For judgment that:

(i)    Defendants have violated the Lanham Act, 15 U.S.C. § 1114;

(ii)    Defendants have violated the Lanham Act, 15 U.S.C. § 1125;

(iii)    Defendants have violated Section 349 of the N.Y. General Business Law;

(iv)    Defendants have violated Section 350 of the N.Y. General Business Law;

(v)    Defendants have violated Section 360-K of the N.Y. General Business Law; and

(vi)    Defendants have violated Section 360-L of the N.Y. General Business Law.

B.      For an order enjoining Defendants, their agents, servants, officers, employees, and all those acting under their control and/or on their behalf and/or in concern with them from using the Aerie Marks in their advertisements and site-mapping.

C.      That Defendants be required to pay to AEO:

(i)      three times the actual damages sustained by AEO as a result of Defendant's violations complained of herein;

(ii)      punitive damages in a sum to be determined by the trier of fact in light of the egregious behavior of Defendants as described herein;

(iii)      disgorgement of Defendants' profits to be determined at trial from its trademark infringement and deceptive business practices; and

(iv)      Plaintiffs' costs, disbursements, expenses, and attorneys' fees.

D.      That Plaintiffs shall have of Defendants such other and further relief as is just and proper.

Dated: September 25, 2024      By:  */s/ Jessica L. Falk*
      New York, New York

        Jessica L. Falk
        Melissa Rutman
        **WEIL, GOTSHAL & MANGES LLP**
        767 Fifth Avenue
        New York, New York 10153-0119
        jessica.falk@weil.com
        melissa.rutman@weil.com
        Telephone: (212) 310-8000
        Facsimile: (212) 310-8007